[No. 14417.   Department Two.— August 12, 1893.]

# J. C: BEDELL, RESPONDENT, *v.* E. H. KOWALSKY, APPELLANT.

SALE OF WHEAT BY SAMPLE—DELIVERY VARYING FROM CONTRACT—LIABILITY OF PURCHASER.— Where a purchaser has contracted for the sale of two lots of wheat by sample to be delivered within ten days, he is liable for a larger quantity, a portion of which is delivered at a later period, if the delivery is accepted by his agent for him and pursuant to his orders, but is not liable for the delivery of any excess to the agent, against his consent, and without his authority.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denyiny a new trial.

The facts are stated in the opinion.

*H. I. Kowalsky,* and *T. J. Crowley,* for Appellant.

*D. H. Whittemore,* for Respondent.

SEARLS, C.— This action was brought to recover a balance on account of wheat sold and delivered to defendant.

Plaintiff had judgment, and defendant prosecutes this appeal from such judgment and from an order denying a new trial.

The demurrer to the complaint was properly overruled.

The objections are twofold : —

1. That it showed a sale of two lots of wheat according to sample, and at the same time averred a delivery of a greater quantity than called for by the contract.

2. That the contract was to deliver within ten days, and the averment is that a portion of the wheat was not delivered within the specified time.

The answer to these objections is that the complaint averred the delivery of a larger quantity to defendant through his agent, who accepted it for him and pursuant to his orders. It was the privilege of the defendant to receive a larger quantity than that called for by his contract if he saw fit, and to receive it at a later period than that named in the agreement, and if he did so, he is liable.

The second point made by appellant relates to a variance between the allegations and the proofs.

According to the complaint the plaintiff on the second day of August, 1887, sold to defendant 2,000 sacks of wheat, to be equal to sample No. 90 (then delivered to defendant), at $1.85 per cental, and 1,060 sacks, to be equal to sample No. 69 (then delivered to defendant), at $2.00 per cental, all of said wheat to be delivered to defendant in ten days at the warehouse of Starr and Company, at South Vallejo, California, and to be paid for as fast as delivered; that before August 10th, plaintiff delivered 2,395 sacks of the wheat equal to sample 90, which was received by Starr and Company for defendant by his order; that defendant refused to pay for the wheat so delivered, and notified plaintiff not to deliver any more, but that plaintiff delivered the remainder of the wheat, to wit, 1,060 sacks, equal to sample 69, to Starr and Company, who accepted and stored the same according to defendant's orders; that defendant has not paid for the same, or any part thereof, except $6,000. The quantity in pounds of each quality of wheat is given, and judgment demanded for the prices specified, amounting to $2,966.78.

The complaint was not verified, and the answer denied all of the material allegations therein contained.

The cause was tried before a jury.

The evidence on the part of the plaintiff was quite sufficient to sustain a cause of action against defendant for a refusal to receive and pay for 2,000 sacks of wheat equal to sample 90, and 1,058 sacks equal to sample 69, provided the latter was delivered in time or the delivery thereof waived by defendant. But the evidence shows that the defendant contended that the wheat was to be delivered not in ten, but in five days, and at the end of the five days he refused to receive it and so notified the broker through whom the purchase was made, and the

wheat on reaching Vallejo was stored as follows: The first lot of 2,395 sacks, for account of the broker, W. H. Yates, from whom defendant had purchased, and the last lot of 1,060 sacks for account of the plaintiff. That defendant never paid anything on account of the wheat, and that plaintiff finally sold it and realized therefor the sum for which he gave defendant credit. The warehouse receipts were not in evidence, but the reports to the office of Starr and Company, the owners, shows that it was deposited for account of as above stated.

The court in passing upon the motion for a new trial says: "The case was tried by both sides in a manner so confusing that it is difficult to determine satisfactorily some of the main points of the plaintiff's case," etc.

I concur fully with the court below, and may add that I have seldom found a record more uncertain and confusing than the present, and it is only by repeatedly groping through it that I am able to piece out the isolated facts so as to understand their bearing and effect. It seems that neither defendant nor his attorney were present until the trial had progressed to some extent, and this will probably account for some of the crudities presented in the record.

Upon the whole case, were it not for one circumstance, I should feel inclined to say that although the action was brought to recover the purchase price of wheat sold and delivered, and the plaintiff recovered upon a breach of a contract by defendant to receive and pay for the same wheat, which was never in fact delivered, yet the case having been tried upon this basis without objection, the verdict should stand.

The circumstance which prevents this conclusion is this: The plaintiff recovered for nearly 500 sacks of wheat, not included in the contract, and which there is no evidence that defendant ever authorized Starr and Company to receive for him.

As to the wheat contracted for, it is said, defendant authorized Starr and Company to receive it for him, and while he repudiated the contract, he did not countermand the order to receive, and the wheat having been stored with that firm for him, although not as to a portion of it within the time specified in the contract, defendant waived the failure to deliver in time, and is liable. For present purposes we may concede this.

The evidence is that defendant called upon Starr and Company and directed them to receive the wheat, for his account, and the particulars of his order are found in the instructions of the firm to their agent at Vallejo, where the wheat was to be delivered, contained in the following letter:—

"VALLEJO, August 2, 1887.

"We send you samples of 2,000 and 1,050 sacks coming to you, account of E. H. Kowalsky, care of W. H. Yates. Gove says put 1,000 of first and 525 of the other into one, and put 100 tons of J. W. lot and make two of the latter cover the exact pounds of 3,050 sacks. Let us know number of lots— J. W. lots — and issue him storage receipts.

"A. B., Vice-President."

In explanation of the foregoing, it is proper to say that there was evidence tending to show that the samples had been submitted to Gove, who was a wheat grader, and that he had decided that if the two qualities were mixed in the proportion above specified the whole would pass as No. 1 shipping wheat, which was designated by Starr and Company as J. W.

There is no evidence of other or further instructions to Starr and Company, and this did not authorize them to receive at Vallejo any quantity of wheat in excess of that specified on account of defendant. When we consider that plaintiff's evidence shows that before any wheat was delivered, defendant had notified the seller that he would not accept or pay for any of it, and that in the interim between the contract and delivery, wheat had fallen at least fifty cents per cental, we are somewhat surprised that plaintiff sought to deliver about 400 sacks of wheat in excess of the quantity called for by the contract, and very greatly surprised that after selling this excess with the other he was permitted to recover for the difference between the price received and the contract price on not only that included in the contract, but the additional 400 sacks as well. To permit a transaction of this sort to go unchallenged, would upon the same principle place a purchaser who had engaged a limited quantity and instructed an agent to receive it in the position of being compelled to receive an unlimited quantity, when the exigencies of a falling market made it for the interest of the seller to furnish such larger quantity.

The point is made by appellant in his brief that the contract was void under the statute of frauds, but neither the pleadings nor testimony are of a character to warrant the consideration of the question.

For the excess of the recovery as above indicated, the judgment and order appealed from should be reversed and a new trial had, with leave to the respective parties to amend their pleadings if they shall be so advised.

HAYNES, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order are reversed and cause remanded for a new trial, with leave to the parties to amend their pleadings if they shall be so advised.

MCFARLAND, J., DE HAVEN, J., FITZGERALD, J.

Hearing in Bank denied.